# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Facebook, Inc. and Instagram SUBJECT
ACCOUNTS, more fully described in
Attachment A

)
)
)
)
)
)

Case No.    MJ21-635

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

Facebook, Inc. and Instagram Subject Accounts more fully described in Attachment A, incorporated herein by reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | Felon in Possession of a Firearm. |
| 21 U.S.C. § 924(c) | Possessing Firearms in Furtherance of Drug Trafficking Crimes. |
| 21 U.S.C. § 841(a)(1) | Distribution of, and Possession with Intent to Distribute, Controlled Substances. |
| 18 U.S.C. § 1591(a)(1) & (b)(1) | Sex Trafficking through Force, Fraud, and Coercion. |
| 18 U.S.C. § 2421 | Transportation for the Purpose of Prostitution. |

The application is based on these facts:

✓    See Affidavit of Det. Alexander Grotzky, continued on the attached sheet.

☐    Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Alexander Grotzky, King County Detective
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or

◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:    11/24/2021

_____
*Judge's signature*

City and state:   Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF ALEXANDER GROTZKY

STATE OF WASHINGTON          )
                             )          ss
COUNTY OF KING               )

I, Alexander Grotzky, a Detective with the King County Sheriff's Office, Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1.      I am a Detective with the King County Sheriff's Office (KCSO), Seattle, Washington and have been so employed since October 2015. I was previously a law enforcement officer in the State of Colorado since April 2005. During that time, I served as a patrol officer as well as a narcotics detective on a Drug Task Force, working in an undercover capacity making controlled purchases of narcotics.

2.      I am currently assigned as a detective with the SeaTac Street Crimes Unit. Some of my responsibilities include investigating narcotic related offenses and vice crimes within King County. I have been involved in numerous narcotics investigations as well as human trafficking/promoting prostitution investigations throughout my career in law enforcement. During my tenure in law enforcement, I have also investigated and assisted in investigating numerous other crimes, including assaults, crimes against persons, and crimes involving the possession and use, theft, or transfer of firearms.

3.      I completed the Basic Law Enforcement Academy in Colorado as well as the Washington State Basic Law Enforcement Equivalency Academy in 2015. In 2010, I attended and completed the Drug Enforcement Administration's 80-hour basic narcotics investigator school. In 2019, I attended the WISN Human Trafficking conference and have since attended multiple vice related trainings. Since 2020, I have instructed classes on vice related operations within the King County Sheriff's Office.   During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the commission of criminal violations.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 1

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.      The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE SUBJECT ACCOUNTS TO BE SEARCHED

5.      I am submitting this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant for the following Facebook and Instagram accounts:

- Account ID Facebook: https://www.facebook.com/everett.kennebrew

- Account ID Instagram: https://www.instagram.com/hotheadev

(hereafter referenced as "SUBJECT ACCOUNTS").  The accounts are for Facebook and Instagram accounts for the target of this investigation, EVERETT HAYES.  As set forth below, law enforcement has received information regarding the above accounts through interviews conducted and intelligence database searches.

6.      The above user IDs identify Facebook and Instagram accounts stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B,

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 2

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government-authorized persons will review that information to locate the items described in Section II of Attachment B.

7.      As discussed below, there is probable cause to believe that HAYES used the SUBJECT ACCOUNTS.  In addition, as further explained below, there is probable cause to believe that HAYES has violated Title 18, United States Code, Section 922(g) (Felon in Possession of a Firearm); Title 18, United States Code, Section 924(c) (Possessing Firearms in Furtherance of Drug Trafficking Crimes); Title 21, United States Code, Section 841(a)(1) (Distribution of, and Possession with Intent to Distribute, Controlled Substances); Title 18, United States Code, Section 1591(a)(1) and (b)(1) (Sex Trafficking through Force, Fraud, and Coercion); and Title 18, United States Code, Section 2421 (Transportation for the Purpose of Prostitution), and that the SUBJECT ACCOUNTS will contain evidence, instrumentalities, contraband, and fruits of violations of these listed offenses, which are described in Attachment B.

8.      This Affidavit is being presented electronically pursuant to Local Criminal Rule CrR 41(d)(3).

## JURISDICTION

9.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).]

## SUMMARY OF PROBABLE CAUSE

### A.      HAYES's Criminal History

10.      I have reviewed court and law enforcement records related to EVERETT JAMESLEE HAYES's criminal history.  These records show that HAYES has an active protection order that prohibits him from possessing firearms, in addition to nine felony convictions that include felony violation of a protection order, robbery in the second degree, unlawful possession of a firearm in the second degree, harassment, theft in the first degree, theft in the second degree, and residential burglary.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 3

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.    Specifically, HAYES has been convicted of the following crimes for which he was sentenced to a term of imprisonment exceeding one year:

i.    *Domestic Violence Felony Violation of a Court Order*, under cause number 18-1-03277-2, dated on or about June 7, 2019, in King County Superior Court, Washington, under the alias EVERETT JAMES KENNEBREW;

ii.    *Unlawful Possession of a Firearm in the Second Degree and Assault in the Third Degree – Domestic Violence*, under cause number 15-1-01092-8, dated on or about July 17, 2015, in King County Superior Court, Washington, under the alias EVERETT JAMES KENNEBREW; and

iii.    *Robbery in the Second Degree and Felony Harassment*, under cause number 11-1-10661-2, dated on or about January 20, 2012, in King County Superior Court, Washington, under the alias EVERETT JAMES KENNEBREW.

**B.    HAYES's July 20, 2021 Arrest**

12.    On July 20, 2021, King County Sheriff's Office (KCSO) Sergeant Hamill, supervisor of the SeaTac Street Crimes Unit, conducted a community area check of the Motel 6 parking lot located at 20651 Military Road South, SeaTac, Washington, and encountered a male bleeding from his face. Sergeant Hamill saw a white SUV quickly pull out of the parking stall driving over the curb and heading north towards the exit. Based on the male's significant injury, the fact that the injured male had been looking at the white SUV as it left, and the SUV's quick departure after driving over the curb, Sergeant Hamill believed that this vehicle had some connection to male as well as the significant injury Sergeant Hamill observed.

13.    Sergeant Hamill followed the SUV out of the complex trying to identify its license plate as well as its make and model. While he was following the SUV, it ran a red light before taking the on-ramp to northbound Interstate 5.  Sergeant Hamill eventually caught up to the SUV and identified it as a Hyundai Tucson bearing California license #8PWL189.

14.    KCSO Master Police Officer (MPO) Bugosh arrived in the area and Sergeant Hamill directed him to the Hyundai. MPO Bugosh began following the Hyundai

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 4

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

as it pulled into the gas station on the northeast corner of South 200 Street and International Boulevard South, where MPO Bugosh conducted a traffic stop.

15.     MPO Bugosh contacted the driver and only occupant, who was later identified as EVERETT JAMESLEE HAYES. The driver's door opened as MPO Bugosh came to a stop behind the vehicle. HAYES immediately got out of the driver's seat, shut the door, and faced MPO Bugosh. MPO Bugosh immediately noticed that HAYES's right pants pocket was inside-out, which was indicative of someone quickly removing an item from tight-fitting jeans. MPO Bugosh told HAYES to come to the front of the patrol car and sit on the front bumper, where MPO Bugosh frisked him for weapons, finding none.

16.     HAYES asked why he was "being detained." MPO Bugosh explained that a detective had watched an incident unfold at the Motel 6 and had seen him quickly leaving the scene. HAYES said he did not have any identification on him, and verbally identified himself to MPO Bugosh as EVERETT KENNEBREW. MPO Bugosh performed a record check of HAYES and confirmed his identity with a matching driver's license photo. HAYES's current Washington driver's license is in the name EVERETT JAMESLEE HAYES, although he previously had a driver's license issued in the name EVERETT J KENNEBREW.  HAYES's driver's license status was suspended, and he was required to use an ignition interlock device when driving, which the Hyundai did not have.

17.     MPO Bugosh arrested HAYES for driving with a suspended license and driving a vehicle without the required ignition interlock device. MPO Bugosh placed HAYES into handcuffs without incident and read him his Miranda rights, which HAYES said he understood. The Hyundai Tucson SUV was secured by KCSO Sergeant Barden pending a search warrant.

18.     During a search incident to arrest, MPO Bugosh seized two .40 caliber rounds of ammunition from HAYES's pants pocket. When MPO Bugosh removed the bullets, HAYES asked "Is that illegal?" Assuming that HAYES knew that it was for him, being a convicted felon, MPO Bugosh confirmed that it was illegal for him to possess those items.  HAYES also had two cell phones, (1) one black cell phone, unknown make

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 5

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and (2) one blue OnePlus cell phone.  He also had $1,889.00 cash on his person. HAYES asked MPO Bugosh numerous times why officers were impounding his girlfriend's car and asking what they were going to look for.

19.    At approximately 3:25 p.m., MPO Bugosh spoke with an individual named A.C., who said that she was renting the vehicle but had loaned it to HAYES to pick up his girlfriend and pay for a room at the motel. MPO Bugosh explained to A.C. that her vehicle was taken pending a search warrant and that HAYES was in SCORE jail.  A.C. stated that the vehicle was "empty" when she loaned it to HAYES.

**C.    Search of Hyundai Tucson operated by HAYES**

20.     KCSO Detective Grotzky obtained a search warrant for the white Hyundai Tucson that HAYES had been driving.  When Detective Kelly searched the Hyundai, he located a Taurus PT140Pro pistol in .40 caliber in the center console. The pistol had a loaded magazine and a spent shell casing in the chamber.

21.    ATF Special Agent Brian Arnold is an interstate nexus expert who has received specialized training in identifying firearms and their place of manufacture.  SA Arnold has examined photographs of the Taurus PT140Pro pistol in .40 caliber and the two .40 caliber rounds of ammunition located in HAYES's pocket from HAYES's July 20, 2021 arrest and the Smith & Wesson SD40VE pistol in .40 caliber, and one round of .40 caliber of ammunition located in the SD40VE pistol, and determined that both firearms and the rounds of ammunition were manufactured outside the State of Washington. Therefore, the firearm and rounds of ammunition must have traveled in interstate or foreign commerce before being possessed in the state of Washington.

**D.    Search of Hotel Room #231**

22.    Later that day, Sergeant Hamill returned to the motel and joined several detectives and deputies who were searching the area where Sergeant Hamill had last seen the injured male.

23.    Detective Myklebust and Detective Ghrmai advised that blood had been located on the lower level and a trail had been followed up to room #231. Due to the

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 6

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

amount of blood and the explanation of injury from Sergeant Hamill, Detective
Myklebust and Detective Ghrmai located room #231, found the door to the room ajar,
and entered the room to provide lifesaving efforts to anyone injured or unconscious
inside. No one was located inside the room. While inside room 231, detectives noticed
what appeared to be a bullet hole in the door of the room. Based on the damage,
detectives believe the bullet hole would have occurred from the inside of room 231. The
room was secured by Detective Myklebust and Detective Ghrmai pending a search
warrant. A request was put out to local hospitals for a possible victim who may have
sought aid.

24.     Detective Ghrmai contacted the neighboring unit to the south (232) and
spoke to the room's occupants, M.B. and S.B. M.B. informed Detective Ghrmai that
earlier that day, she had heard a fight next door and could hear multiple males and a
female arguing. M.B. stated that she had heard what sounded like someone getting
slammed into the wall. M.B. said she had been returning from a trip when she heard the
argument. S.B. advised Detective Ghrmai she was sleeping while M.B. was gone, but
awoke to what she thought was a gunshot. S.B. said she wasn't sure if it was a gunshot
because the sound is what woke her up.  S.B. further stated that she could hear an
argument next door but no other gunshots. S.B. said that she was scared and did not want
to open the door to find out what was going on. S.B. and M.B. informed Detective
Ghrmai they did not see anyone who was involved in the altercation; they could just hear
it.

25.     Law enforcement has reviewed surveillance video footage at the Motel 6
and observed a subject who matched HAYES's description (white t-shirt, black/white
pants, black hat, ponytail) exit room 231 shortly before Sergeant Hamill arrived at the
motel.  Further viewing of the video footage shows HAYES carrying under his shirt a
shiny item consistent with a firearm.

26.     After obtaining a search warrant, KCSO Detectives Kelly and Grotzky
searched room 231 taking photographs and recovered biological evidence.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 7

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**E.     HAYES's Involvement in Prostitution/Sex Trafficking**

27.     On August 4, 2021, I listened to a voice mail from HAYES in which he stated that he wanted his money and phone back, and that he wanted to sue the King County Sheriff's Office as a result of his July 20, 2021 arrest.  HAYES requested a call back and provided a call-back number of 253-508-3082.   I called this number, which went straight to voice mail, and left a message for HAYES asking him to call him back.

28.     I conducted a law enforcement database search of the number 253-508-3082 and learned that it had been used to post online sex advertisements in the Seattle area.  Specifically, I located multiple different advertisements that featured photographs of a woman, subsequently identified as T.M., over the past year.   These advertisements of T.M. were posted on multiple different websites including privatedelights.ch, megapersonals.com, and onebackpage.com, all of which are known "escort" sites that are commonly used to advertise individuals engaged in prostitution.  One posting contained several photographs of T.M., including a nude photograph with her breasts exposed.  Several advertisements included the same narrative, which I am aware from training and experience is typical of the language used to advertise prostitution services and rates.  The narrative on several posts stated: "Hey gentlemen my name is Sheena Bonita.  I'm a curvy blasian & native american with 42DDD bust [insert of winking face emoji].  Your time with me is always unrushed and I aim to please and make sure you're comfortable and left satisfied.  I am TNA certified and have great reviews.  I am always clean and professional so I expect the same in return! Looking forward to hearing from you, lets have some fun! [insert kissing face emoji]  Ask about VIP menu!"  Additionally on this post was a price menu with the following prices: "QV 150 150 HH 200 HR 250 GFE +50 extra."  I was aware through training and experience that these terms are commonly used in the commercial sex trade.  For example, "QV" is short for a "quick visit" or "quicky", "HH" references a half hour of time, "HR" is an hour visit that commonly involves sexual intercourse, and "GFE" is short for "girlfriend experience," which means that the prostitute will act as if they are the sex purchaser's actual girlfriend.  Based upon the

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 8

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

language used and photographs included on these advertisements, I concluded that they clearly advertised commercial sex.

29.     As noted above, the advertisements reviewed by me contained photographs of a female with the stage name of "TasheenaBonita."  This female appeared to me to be a female named T.M., who was listed as an associate of HAYES in another recent case (King County Sheriff's Office case number C21023693), in which HAYES is the suspect in a motor vehicle theft.  I compared T.M.'s Washington State Department of Licensing photograph to the photographs on the online advertisements and confirmed that "TasheenaBonita" was T.M.  In addition, a law enforcement database search indicated that the 253-508-3082 phone number that HAYES had given to me was listed to an individual named T.M.

30.     As part of his involvement on the above-described motor vehicle theft case, I learned that a woman named T.N. had accused HAYES of taking her vehicle, a red Dodge Challenger BKD7436.  I then sent a text message to the 253-508-3082 number that HAYES had given me as a call-back number in which I posed as a commercial sex customer interested in setting up a "date."  A short time later, I received a message from this number.   The message, which purported to be from a woman, stated that she was currently in the Hollywood area of Los Angeles.

31.     On August 6, 2021, law enforcement applied for and obtained a court order that provided the GPS location coordinates for the 253-508-3082 phone number.  Later that evening, after sending the order to Verizon Wireless, I learned that HAYES had been arrested in Los Angeles, California for driving a stolen vehicle and having a firearm in his possession.  During this time, Sergeant Hammill learned the King County Prosecutor's Office would decline to extradite HAYES from California if charges were filed in the case.   HAYES was released from custody in Los Angeles several days after his arrest.

32.     I continued to check law enforcement databases and learned that an online "escort" advertisement for this number had been posted on the website Privatedelights.ch

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 9

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

on August 12, 2021.  I am aware that Privatedelights.ch is an online escort website that caters to advertisements for sex workers. The advertisement had a photograph of T.M. and the text indicated that the advertisement had been posted in Los Angeles, California, and the photographs and wording indicated that it was an advertisement for prostitution. I checked for additional advertisements and found additional postings for prostitution advertisements for "TasheenaBonita" between August 12, 2021, and August 26, 2021, in the Los Angeles area.   In addition, the phone location "pings" from this cell phone number matched the advertisement location in the greater Los Angeles area.

33.     On August 27, 2021, the phone location "pings" showed the phone's location in Portland, Oregon.  This same date, an online prostitution/escort advertisement featuring a photograph of "TasheenaBonita" was posted in Portland, Oregon.  Similar advertisements featuring "TasheenaBonita" until August 31, 2021.

34.     After receiving information that HAYES had a Facebook account under the name "Preneur Ponopoly," I found a publicly available account with that profile name. Upon reviewing the account, I saw that the account user name is listed to "Everett.Kennebrew" (a known alias of HAYES) and had multiple photos of HAYES on its timeline. Looking through the Facebook postings, I observed multiple postings with HAYES tagging his location in the Los Angeles, California area between August 14, 2021 through August 28, 2021, where he posted he was "Back in Seattle leaving town soon won't be here long tap in." It should be noted this post did not have a location tag with it.

35.     I am aware, based upon my training and experience and my consultations with other law enforcement officers who have experience investigating crimes involving sex trafficking or prostitution, that sex traffickers/pimps often take their victims to different locations throughout the United States to see new clientele in order to make more money.   I am aware that many sex traffickers/pimps will travel with their victims along the West Coast "circuit," which often includes travel to Seattle, Portland, Las Vegas, and Los Angeles.   Each of these areas have known prostitution areas or "tracks."

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 10

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

My review of the information contained in the escort advertisements, phone location coordinates, and HAYES's Facebook posts are consistent with HAYES taking T.M. to Oregon and California for the purpose of prostitution.

**F.     HAYES's October 7, 2021 Arrest**

36.     On October 6, 2021, United States Magistrate Judge S. Kate Vaughan of the United States District Court for the Western District of Washington issued an arrest warrant for HAYES for violation of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of Firearm and Ammunition).

37.     On October 7, 2021, at approximately 11:00 a.m., local and federal law enforcement officers held a briefing to prepare for the execution of HAYES's outstanding federal warrant.  After the briefing, law enforcement units established surveillance around HAYES's last known residence in Kent, Washington, but did not see signs of HAYES.

38.     Law enforcement then attempted to utilize a ruse by contacting HAYES and advising him that he could take possession of the cash that had been seized from his person by KCSO deputies on July 20, 2021 by retrieving it at SeaTac City Hall.   Law enforcement officers were advised that the money would not be released unless HAYES appeared in person.

39.     At approximately 1:35 p.m., a white female wearing a green jacket, later identified as M.E.K., arrived SeaTac City Hall and asked to take custody of the cash on behalf of HAYES. KCSO deputies contacted M.E.K. and turned her away. M.E.K. then left on foot and walked towards a 76 gas station across the street. Special Agent (SA) Salcepuedes observed M.E.K. going into the store and then exiting a few minutes later, after which she got into the driver's seat of a silver Honda Civic 4 door sedan that was parked on the southwest corner of the gas station lot.

40.     At approximately 1:52 p.m., the silver Honda Civic left the parking lot and traveled west to a Marathon gas station located at 2841 S. 188th Street in Seattle. Surveillance units followed the Honda Civic to the gas station, where they observed

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 11

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

M.E.K. parked by a gas pump.  Shortly thereafter, HAYES, who had been walking in front of the gas station, got into the front passenger seat of the Honda Civic. After getting in, I observed his upper body lean forward as if he was placing something under the seat or on the floorboard.  An arrest team moved in and initiated the arrest by activating their emergency lights. HAYES was taken out of the front passenger seat of the silver Honda Civic and arrested without incident. M.E.K. was taken out from the driver's seat of the silver Honda Civic and then detained.  While taking HAYES out of the vehicle, SA Salcepuedes observed in plain view suspected narcotics – namely, pills that had "M" and "30" imprinted on them in a clear plastic baggie hanging on the front passenger side door inside a black fabric container. SA Salcepuedes also observed a pistol with a silver slide underneath the front passenger seat.   Both the narcotics and firearm were in the immediate area of HAYES during the arrest.

41.     HAYES was searched incident to arrest. Among other things, law enforcement discovered a silver iPhone, which was taken into custody.

42.     SA Salcepuedes also recovered approximately 100 "M-30" pills weighing 15 grams, which based upon his training and experience, he knew are often laced with fentanyl.  I am aware, based upon my training and experience, that possession of 100 "M-30" pills are consistent with distribution quantities, as opposed to personal use. SA Salcepuedes also recovered the pistol underneath the front passenger seat. The pistol was a Smith & Wesson model SD40 VE, .40 caliber pistol with serial number FYT0363. While rendering it safe, SA Salcepuedes noted that the firearm was loaded and had a round in the chamber.  A subsequent law enforcement database check on the Smith & Wesson pistol returned with no record.

43.     HAYES was transported and booked for his outstanding federal warrant at the Federal Detention Center in SeaTac, Washington.

44.     The Smith & Wesson model SD40 VE, .40 caliber pistol with serial number FYT0363 was subsequently sent to the King County Regional Identification Program Automatic Fingerprint Identification System (AFIS) for latent fingerprint testing.  Latent

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 12

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  fingerprints were recorded from the Smith & Wesson pistol and were identified as

2  belonging to HAYES.

3  **G.    Interview of M.E.K.**

4         45.     On October 7, 2021, ATF SA Natalia Vorotnikova and Task Force Officer

5  (TFO) Todd Early had a recorded interview with M.E.K. following the arrest of HAYES.

6         46.     M.E.K. stated that HAYES is her daughter's cousin who she had not seen

7  for approximately two years until recently. M.E.K. advised on the day of the HAYES'

8  arrest she was operating a 2006 silver Honda Civic. M.E.K. stated the vehicle was

9  registered to her son, but she was the primary user. M.E.K. also added HAYES operated

10 the vehicle on the day of the arrest.

11        47.     M.E.K. stated on the day of the arrest HAYES called her and advised her

12 that he was coming over. M.E.K. provided the investigators with HAYES's cellphone

13 number (253-508-3082). M.E.K. stated during the phone call, HAYES asked her to pick

14 up his belongings that had been seized at his prior arrest, and that the items were at the

15 SeaTac Police Department.

16        48.     M.E.K. advised that after HAYES arrived at her residence, she drove with

17 HAYES to meet with M.E.K.'s daughter's father at the Econo Lodge.  M.E.K. further

18 stated after the meeting with daughter's father, she and HAYES drove to a hotel parking

19 lot across the street from the Marathon gas station where the arrest was conducted. (Note:

20 the hotel across the street from Marathon gas station was Double Tree by Hilton, located

21 at 18740 International Boulevard, Seattle, Washington.) M.E.K. told law enforcement

22 that HAYES drove the Honda Civic from Econo Lodge to Double Tree by Hilton.

23        49.     After HAYES exited the vehicle, M.E.K. drove to SeaTac Police

24 Department (PD). M.E.K. advised that she parked the vehicle at 76 gas station across the

25 street from Seatac PD and walked across the street because her license was suspended.

26        50.     M.E.K. stated when she met with the police officers, she was advised they

27 could not release the money to her. M.E.K. stated she then walked back to her car,

28 contacted HAYES, and told him the police could not release money to her. M.E.K. stated

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 13

that she drove to the Marathon gas station where she reconnected with HAYES.  M.E.K. said that HAYES told her that he wanted to go to the police station to pick up his money himself.

51.     M.E.K. stated that when the arrest was initiated, she was in the driver's seat and HAYES was in the passenger's seat.  She further stated that she had no knowledge of the firearm the investigators recovered from her vehicle.  M.E.K. added she was a convicted felon and could not possess a firearm.

52.     Prior to the interview being conducted, the investigators located a bag with M-30 pills in a plastic bag suspected to contain fentanyl, took a photo of it and showed it to M.E.K. When inquired about the bag with pills, M.E.K. advised she had never seen those pills before.

53.     M.E.K. reiterated she had not seen HAYES for years until recently and they communicated through Facebook.  She further reiterated that she was not aware of the firearm and pills were in her vehicle. M.E.K. advised she had been incarcerated for narcotics related conviction and was released approximately three years ago.

**H.    HAYES's October 8, 2021 Transport**

54.     On October 8, 2021, ATF SAs Salcepuedes and Arnold transported HAYES from the Federal Detention Center to the United States District Court in Seattle for his initial appearance with a United States Magistrate Judge.  SA Salcepuedes audio recorded the transport.  At the start of the transport,  SA Salcepuedes reminded HAYES that he had previously been read his Miranda rights.

55.     Before the audio recording started, HAYES requested if he could make phone calls to his child's mother to get his Mercedes out of a parking spot at an apartment so it would not get towed.  Upon learning that she was in Portland, he asked SA Salcepuedes to call M.E.K.   During this conversation, which was conducted on speaker phone, HAYES told M.E.K. that she could pick up the keys to his Mercedes at the ATF office.  HAYES also apologized to M.E.K. and told her "I'm gonna take

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 14

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

responsibility for my actions." HAYES apologized and told her he did not want her in trouble and concluded the phone call.

56.     SA Salcepuedes asked HAYES if he was selling the pills that had been recovered at his arrest on the front passenger side door, to which HAYES replied "no." HAYES admitted to being a drug user and stated that he used pills and methamphetamine.  When SA Salcepuedes asked if he could tell him where he got the pills, HAYES replied "no" and stated that he had bought the pills from someone he knew that he did not want to give up.

57.     HAYES then told agents of a different individual who he knew and got his "shit" from. HAYES told agents that he believed that person was a "snitch" and a "rat" (referring to a person who is an informant or provides information to law enforcement). HAYES stated that after learning about this, HAYES decided to rob this individual.

58.     SA Salcepuedes asked HAYES if the reason why he is always armed is because of being robbed in the past. HAYES stated he had been robbed, jumped, and pistol whipped in the past. HAYES told agents he lost his right to bear arms and that he was being punished for that.

I.     IDENTIFICATION OF SOCIAL MEDIA ACCOUNTS

59.     Through investigation, law enforcement has determined that HAYES likely uses or used a Facebook account associated with the URL: https://www.facebook.com/everett.kennebrew.  Specifically, as noted above, while conducting follow-up from this incident, I located a facebook.com account under the name "Preneur Ponopoly." The account user name is listed to Everett.Kennebrew (which is an alias of HAYES) and has multiple photos of HAYES on it.  As noted above, HAYES's publicly viewable posts included multiple postings with him tagging his location in the Los Angeles, California area between August 14, 2021 to August 28, 2021, when he posted he was "Back in Seattle leaving town soon won't be here long tap in."

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 15

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

60.    I reviewed a posting on the account's "wall" dated July 16, 2021, that stated "FEDS WILL THROW THE BOOK AT ME IF THEY FIND WHATS IN THIS GUCCI BOOK BAG!"

61.    Through investigation, agents have also determined that HAYES likely uses an Instagram account associated with URL: https://www.instagram.com/hotheadev. I learned of this account after HAYES stated in a recent Facebook posting that he intended to stop posting on his Facebook account soon and directed people to view his Instagram count.  Using various searches on Instagram, I found an account user name titled "hotheadev" that had a photograph of HAYES on it.  However, this account had privacy settings that prevented me from viewing any other content.

62.    On 11/03/2021, and 11/05/2021, I served Facebook, Inc. with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Facebook to preserve all information associated with the SUBJECT ACCOUNTS.  On November 9, 2021, I again checked HAYES's Facebook and Instagram accounts and found that they had been removed and were no longer publicly accessible.

63.    Based on my training and experience, once Facebook preserves an account that data is kept by the company, even if the user deletes the account.  In this situation, it appears the accounts have been deleted after they were preserved by Facebook.

## KNOWLEDGE REGARDING FACEBOOK

64.    Through my training and experience, conversations with other law enforcement agents, and through review of Facebook's website, I am aware of the following information regarding records available from Facebook.

65.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 16

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

66.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

67.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

68.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

69.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location,

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 17

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

70.    Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

71.    Facebook users can exchange private messages on Facebook with other users.  Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger.  These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

72.    If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

73.    Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 18

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

well as webpages or content on third-party (i.e., non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

74.    Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

75.    Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

76.    Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

77.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

78.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

79.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 19

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  relating to their accounts, such as technical problems, billing inquiries, or complaints

2  from other users.  Social networking providers like Facebook typically retain records

3  about such communications, including records of contacts between the user and the

4  provider's support services, as well as records of any actions taken by the provider or

5  user as a result of the communications.

6  ## BACKGROUND REGARDING INSTAGRAM

7       80.    Instagram is a service owned by Facebook.  Specifically, Instagram is a

8  free-access social networking service, accessible through its website and its mobile

9  application, that allows subscribers to acquire and use Instagram accounts, like the target

10  account associated with URL: https://www.instagram.com/hotheadev listed in

11  Attachment A, through which users can share messages, multimedia, and other

12  information with other Instagram users and the general public.

13       81.    Facebook collects basic contact and personal identifying information from

14  users during the Instagram registration process.  This information, which can later be

15  changed by the user, may include the user's full name, birth date, gender, contact e-mail

16  addresses, physical address (including city, state, and zip code), telephone numbers,

17  credit card or bank account number, and other personal identifiers.  Facebook keeps

18  records of changes made to this information.

19       82.    Facebook also collects and retains information about how each user

20  accesses and uses Instagram.  This includes information about the Internet Protocol

21  ("IP") addresses used to create and use an account, unique identifiers and other

22  information about devices and web browsers used to access an account, and session times

23  and durations.

24       83.    Each Instagram account is identified by a unique username chosen by the

25  user.  Users can change their usernames whenever they choose but no two users can have

26  the same usernames at the same time.  Instagram users can create multiple accounts and,

27  if "added" to the primary account, can switch between the associated accounts on a

28  device without having to repeatedly log-in and log-out.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 20

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

84.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.  Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.  For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.  Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

85.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).  Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

86.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact lists on their devices to identify which contacts are Instagram users.  Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users.  Users can also manually search for friends or associates.

87.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only by the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 21

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

88.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.  Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

89.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

90.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Facebook's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

91.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

92.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 22

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

93.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

94.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Facebook retains records of a user's search history and followed hashtags.

95.     Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

96.     Facebook uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Facebook maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

97.     In some cases, Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 23

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the provider's support services, as well as records of any actions taken by the provider or

2  user as a result of the communications.

3  98.     For each Instagram user, Facebook collects and retains the content and

4  other records described above, sometimes even after it is changed by the user (including

5  usernames, phone numbers, email addresses, full names, privacy settings, email

6  addresses, and profile bios and links).

## KNOWLEDGE REGARDING USE OF FACEBOOK AND INSTAGRAM ACCOUNTS AS INSTRUMENTALITIES OF THE CRIME

9  99.     The use of a Facebook or Instagram account to facilitate sex trafficking and

10  interstate transportation for the purpose of prostitution is not unusual.  Through my

11  investigative experience, and based upon training and conversations with other law

12  enforcement officers involved in sex trafficking/prostitution investigations, I am aware

13  that persons involved in prostitution and sex trafficking often use social networking

14  websites, including Facebook and Instagram, as a tool or instrumentality in committing

15  their criminal activity.   Specifically, pimps and sex traffickers often use Facebook and

16  Instagram to identify potential recruits, to communicate with these recruits via Facebook

17  Messenger/Instagram direct messaging or posts on a victim's "wall," and to keep track of

18  their victims and their whereabouts.

19  100.    I am also aware from my training and experience that pimps and sex

20  traffickers will often take pictures of the females working for them and post these

21  pictures on their Facebook or Instagram account.  I am also aware from my training and

22  experience that pimps and sex traffickers will often transport their victims to different

23  cities and states to work as prostitutes.  In such situations, pimps and sex traffickers will

24  sometimes post on their Facebook or Instagram accounts about the locations where they

25  are visiting and how much money they are making at these locations.

26  101.    I am also aware from my training and experience that sex traffickers will

27  often use the Internet to identify and recruit potential victims.  In my experience,

28

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 24

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

traffickers will often utilize social media websites such as Facebook and Instagram to either identify individuals who might be vulnerable to their coercion and exploitation.

102.    Based upon the information set forth above, I believe that the two SUBJECT ACCOUNTS associated with HAYES are instrumentalities of Sex Trafficking through Force, Fraud, and Coercion and Transportation for the Purpose of Prostitution and are permeated with evidence of these crimes.  A search of these accounts is needed to identify other potential victims who may have been exploited by HAYES.

103.    I also know, based on my training and experience, that individuals engaged in drug trafficking or drug possession crimes will often take photographs of themselves with contraband, including drugs or firearms.  They will then post said pictures on social media such as Facebook or Instagram.  In my experience investigating drug trafficking and gun possession crimes, I have frequently seen and recovered photographs posted on social media websites, such as Facebook and Instagram, that depict suspects (including prohibited suspects) displaying and/or brandishing contraband, including drugs and firearms.

104.    In addition, I also know, based on my training and experience, drug traffickers, such HAYES, use firearms to protect their drug transactions. Accordingly, drug traffickers, such as HAYES, will frequently acquire firearms from other individuals by trading for narcotics.  Evidence of their negotiations for the illicit purchase and sale of firearms, in the form of text messages and/or other messaging applications, can and often are found on the messaging applications used by social media websites such as Facebook or Instagram.  I have personally had the experience of searching, or causing others to search, social media accounts that have been seized in the course of a criminal investigations and found communications evidencing the acquisition and possession of firearms by prohibited individuals.  Similarly, I am also aware of many individuals involved in drug trafficking to use messaging applications from Facebook or Instagram to communicate with their drug trafficking co-conspirators or customers regarding drug

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 25

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

transactions, or to send pictures of contraband and controlled substances to their co-conspirators or customers.

105.    Based upon the information set forth above, I believe that the two SUBJECT ACCOUNTS associated with HAYES will contains evidence, instrumentalities, contraband, and fruits of the violations of the crimes of Felon in Possession of a Firearm (Title 18, United States Code, Section 922(g); Possessing Firearms in Furtherance of Drug Trafficking Crimes (Title 18, United States Code, Section 924(c)) Distribution of, and Possession with Intent to Distribute, Controlled Substances (Title 21, United States Code, Section 841(a)(1)).

## POTENTIAL RELEVANCE OF DATA FROM FACEBOOK AND INSTAGRAM ACCOUNTS

106.    In my training and experience, evidence of who was using Facebook and Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

107.    For example, the stored communications and files connected to the SUBJECT ACCOUNTS may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

108.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 26

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

109.    Stored communications including Facebook messenger chats or Instagram direct messages not only may contain communications relating to crimes, but also help identify and locate the participants in those crimes.  Group lists and friend lists may help identify co-conspirators.  Similarly, photographs and videos may help identify and locate the account holder and any co-conspirators.  Search and browsing history can also be extremely useful in identifying those using anonymous online accounts and may also constitute direct evidence of the crime of labor trafficking or money laundering to the extent the browsing history or search history might include searches and browsing history related to worksites or attempts to recruit potential victims or conducting financial transactions with the proceeds of forced labor.

110.    With respect to this case, I anticipate that the SUBJECT ACCOUNTS may contain photographs that may establish HAYES's involvement in the crimes set forth above, as well as communications between HAYES and co-conspirators and/or victims of his crimes.   Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

111.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 27

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

112.    Based on the foregoing, there is probable cause to believe that the SUBJECT ACCOUNTS, more particularly described in Attachment A, contain evidence and instrumentalities of the crimes of Felon in Possession of a Firearm (Title 18, United States Code, Section 922(g)); Possessing Firearms in Furtherance of Drug Trafficking Crimes (Title 18, United States Code, Section 924(c); Distribution of, and Possession with Intent to Distribute, Controlled Substances (Title 21, United States Code, Section 841(a)(1)); Sex Trafficking through Force, Fraud, and Coercion (Title 18, United States Code, Section 1591(a)(1) and (b)(1)) and Transportation for the Purpose of Prostitution (Title 18, United States Code, Section 2421, as described in Attachment B.

113.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

114.    The government will execute this warrant by serving the warrant on Facebook.  Because Facebook employees will compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING AND NON-DISCLOSURE**

115.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court and that the Court issue an order prohibiting Facebook from disclosing the execution of this warrant to the account holder.  These warrant documents discuss an ongoing investigation, the full scope and details of which are not known to the primary target of the investigation.  Evidence obtained through this investigation, described in greater detail above, suggests that HAYES may be involved in sex trafficking through force, fraud, or coercion, or transportation for the purpose of prostitution.  Further, the Facebook records sought through this investigation may lead to additional targets, such as co-conspirators and accomplices who facilitated HAYES's involvement in the above-described crimes.  Accordingly, there is good cause to seal these documents because their

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 28

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

premature disclosure may give the target and co-conspirators an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, or otherwise jeopardize the investigation.


_____
ALEXANDER GROTZKY
Detective
King County Sheriff's Office


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 24th day of November, 2021.


_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 29

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **ATTACHMENT A**
## **ACCOUNTS TO BE SEARCHED**

This warrant applies to information associated with the following Facebook, Inc. and Instagram accounts:

- Account ID Facebook: https://www.facebook.com/everett.kennebrew
- Account ID Instagram: https://www.instagram.com/hotheadev

that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 30

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

## I.      Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each of the SUBJECT ACCOUNTS listed in Attachment A:

a.      All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

b.      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2020, to present;

c.      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from January 1, 2020, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

d.      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications, from January 1, 2020, to present;

e.      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string, from January 1, 2020, to present;

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 31

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    f.  All other records and contents of communications and messages made or received by the user from January 1, 2020, to present, including all Messenger activity, private messages, chat history, video calling and voice calling history, and pending "Friend" requests;

    g.  All "check ins" and other location information from January 1, 2020, to present;

    h.  All IP logs, including all records of the IP addresses that logged into the account from January 1, 2020, to present;

    i.  All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked" from January 1, 2020, to present;

    j.  All information about the Facebook pages that the account is or was a "fan" of from January 1, 2020, to present;

    k.  All past and present lists of friends created by the account;

    l.  All records of Facebook searches performed by the account from January 1, 2020, to present;

    m.  All information about the user's access and use of Facebook Marketplace;

    n.  The types of service utilized by the user;

    o.  The length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

    p.  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

    q.  All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

    r.  A list of any accounts linked to the SUBJECT ACCOUNT by machine cookie.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 32

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
Facebook is hereby ordered to disclose the above information to the government within **14 DAYS** of issuance of this warrant.

3
4
## II.    Information to be seized by the government

5
6
7
8
9
10
11
12
13
14
All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(g) (Felon in Possession of a Firearm); Title 18, United States Code, Section 924(c) (Possessing Firearms in Furtherance of Drug Trafficking Crimes); Title 21, United States Code, Section 841(a)(1) (Distribution of, and Possession with Intent to Distribute, Controlled Substances); Title 18, United States Code, Section 1591(a)(1) and (b)(1) (Sex Trafficking through Force, Fraud, and Coercion); and Title 18, United States Code, Section 2421 (Transportation for the Purpose of Prostitution) involving EVERETT HAYES, including for the SUBJECT ACCOUNTS identified on Attachment A, information pertaining to the following matters:

15
16
a.     Evidence that EVERETT HAYES or his co-conspirators are involved in prostitution, sex trafficking, drug trafficking; or illegal possession of firearms;

17
b.     Evidence regarding the proceeds of the enumerated offenses;

18
19
20
21
c.     IP log evidence, including all records of the IP addresses that logged into the account, and the dates and times such logins occurred, suggesting that EVERETT HAYES traveled within or outside the Western District of Washington to conduct prostitution or sex trafficking;

22
23
24
d.     Evidence suggesting that EVERETT HAYES or his co-conspirators traveled within or outside the Western District of Washington to conduct prostitution or sex trafficking;

25
26
27
e.     Evidence that EVERETT HAYES or his co-conspirators used Facebook or Instagram to recruit individuals to prostitute for him, or to intimidate or tamper with victims or potential witnesses;

28
f.     Evidence of the identities of and relationships between co-conspirators;

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 33

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.      Evidence of who uses or accesses the subject account or who exercises in any way any dominion or control over SUBJECT ACCOUNTS;

h.      Evidence of who communicated with the SUBJECT ACCOUNTS, including records about their identities and whereabouts.

i.      Log records, including IP address captures, associated with the specified account;

j.      Subscriber records associated with the specified accounts, including 1) names, email addresses, and screen names; 2) physical addresses; 3) records of session times and durations; 4) length of service (including start date) and types of services utilized; 5) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address such as internet protocol address, media access card addresses, or any other unique device identifiers recorded by Google in relation to the accounts; 6) account log files (login IP address, account activation IP addresses, and IP address history); 7) detailed billing records/logs; 8) means and source of payment; and 9) lists of all related accounts;

k.      Records of communications between Facebook and any person purporting to be the account holder about issues relating to the SUBJECT ACCOUNTS, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

l.      Information identifying accounts that are linked or associated with the SUBJECT ACCOUNTS.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 34

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Facebook, and my official title is _____.  I am a custodian of records for Facebook.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

GROTZKY AFFIDAVIT (Facebook and Instagram) /USAO 2021R01128
UNITED STATES v. HAYES/21CR172-RSL - 35

UNITED STATES ATTORNEY
700 STEWART ST., SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970